UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARY F. BROWN, ) | |
| ) | |
|     *Plaintiff* ) | |
| ) | |
| v. ) | *Docket No. 06-22-B-W* |
| ) | |
| JO ANNE B. BARNHART, ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
|     *Defendant* ) | |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question whether substantial evidence supports the commissioner's determination that the plaintiff, who alleges disability stemming from chronic pain syndrome, diabetes, headaches, fibromyalgia, arthritis and depression, is capable of making an adjustment to work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be vacated and the case remanded for further development.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had chronic pain syndrome and diabetes, impairments that were severe but did not meet or equal the criteria of any impairment listed in

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 1, *(continued on next page)*

Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Findings 2-3, Record at 22; that she retained the residual functional capacity ("RFC") to perform the physical demands required at the light exertional level but had nonexertional limitations that (i) restricted her from constant use of her right hand, (ii) precluded her from climbing ladders, ropes and scaffolds and (iii) limited her to only occasional climbing, balancing, stooping, kneeling, crouching or crawling, Finding 6, *id.*; that, despite the fact that she retained a light RFC, she was unable to return to past relevant work as a self-employed sporting goods business manager/owner, even though she contended she performed it at the sedentary exertional capacity due to her impairments, Finding 7, *id.*; that she was forty-eight years old (a "younger individual"), had a high-school equivalency education and retained the RFC to perform a significant range of light work, Findings 8-10, *id.*; that, using Rule 202.21 of Table 2, Appendix 2 to Subpart P, 20 C.F.R. § 404 (the "Grid") as a framework for decision-making, there were a significant number of jobs in the regional and national economies she could perform, Finding 11, *id.*; and that she therefore was not under a disability at any time through the date of decision, Finding 12, *id.* at 23. The Appeals Council declined to review the decision, *id.* at 6-9, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).[2]

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion

---

2006, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

[2] The plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD through September 30, 2006, *see* Record at 16, subsequent to the date of decision of September 22, 2004, *see id.* at 23.

drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 404.1520(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff complains that the decision of the administrative law judge contains three "principal" errors, to wit: that it (i) is inconsistent and does not accurately reflect the medical evidence, (ii) fails to discuss relevant Listings or to consider all of the medical conditions reflected in the evidence, and (iii) errs in its handling of mental-impairment issues.  *See generally* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 10).[3]  At oral argument, counsel for the plaintiff withdrew her third point of error.  I agree that, on the basis of two arguments advanced under the rubric of her first point, reversal and remand are warranted.  For the benefit of the parties on remand, I briefly address the remaining points, none of which provides grounds for reversal and remand.

## I. Discussion

### A. First Point of Error

The plaintiff's first point of error breaks down into three separate subpoints, to wit, that:

---

[3] Each of the plaintiff's points of error subsumes at least two discrete arguments.  *See generally* Statement of Errors.  Counsel is reminded to break each separate argument into a separate point of error.

1. The decision is internally inconsistent, the administrative law judge having credited the plaintiff's hearing testimony that she could not return to past relevant work performed at a sedentary level but then having found that the plaintiff retained the RFC for light work. *See id*. at 2.

2. The administrative law judge adopted outdated RFC evaluations by Disability Determination Services ("DDS") non-examining consultants, omitting to seek any new medical consultation with respect to records submitted subsequent to completion of those DDS reports that, in the plaintiff's view, call into question her ability to perform the standing and walking requirements of light work. *See id*. at 2-3.

3. The administrative law judge improperly relied on the Grid for her Step 5 finding despite having determined that the plaintiff suffered from nonexertional impairments (in particular, restrictions on reaching and handling with her right arm) that precluded such reliance. *See id*. at 3-5.

For the reasons that follow, the second and third of these subpoints have merit, and each independently warrants reversal and remand.

### 1. Subpoint 2: Adoption of Outdated DDS Reports

The Record contains two RFC assessments by DDS non-examining consultants, one dated May 13, 2003 by C.E. Burden, M.D., and one dated July 9, 2003 by Lawrence Johnson, M.D. *See* Record at 526-41. The plaintiff submitted medical records postdating the DDS reports, including several reflecting treatment for diabetes-related peripheral neuropathy affecting her lower extremities. *See id*. at 543-47.

In progress notes memorializing a December 18, 2003 office visit, the plaintiff's longtime treating physician, Ted Sussman, M.D., observed that she had mildly diminished vibration sense and "some mild peripheral neuropathy." Record at 547.[4] Dr. Sussman planned to increase her dosage of

---

[4] The plaintiff testified that Dr. Sussman had been her treating physician for twenty years. *See* Record at 576.

Neurontin. *See id*. On February 3, 2004 the plaintiff presented at Dr. Sussman's office for followup of "painful feet[,]" with "increasing pins and needles." *Id*. at 544. On examination, Dr. Sussman noted that the plaintiff's feet were warm and that she had "decreased vibration sense in the toes[.]" *Id*. He diagnosed increasing peripheral neuropathy and once again adjusted her medications. *See id*. When the plaintiff returned on February 18, 2004 (the most recent progress note of Record), she reported that the Neurontin had been helpful but that she had "increasing burning in her feet, particularly in the early morning hours until she wakes up." *Id*. at 543. On examination, Dr. Sussman found "decreased vibration sense of the toes, although it is intact in the ankles." *Id*. He concluded that her diabetes was markedly improved but warned her that she needed tight control of that condition to prevent worsening of her neuropathy. *See id*. He stated: "Her neuropathic pain appears somewhat out of proportion to the degree of vibration sense dim[i]n[u]tion, but hopefully this will improve as her diabetic control becomes adequate now that she is off of steroids." *Id*.

The First Circuit has made clear that, in appropriate circumstances, the opinion of a non-examining consultant can constitute "substantial evidence" in support of an administrative law judge's finding. *See, e.g., Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994) ("[T]he amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert. In some cases, written reports submitted by non-testifying, non-examining physicians cannot alone constitute substantial evidence, although this is not an ironclad rule.") (citations and internal quotation marks omitted).

The administrative law judge accepted the DDS findings, concluding that they remained consistent with the medical evidence of record. *See* Record at 19. She noted that in February 2004 Dr. Sussman had reported that although the plaintiff experienced some peripheral neuropathy, her

diabetes was markedly improved, and her complaints of neuropathic pain appeared to be out of proportion to the degree of objective clinical findings. *See id*. at 20. Nonetheless, while Dr. Sussman did find the plaintiff's pain "somewhat out of proportion" to his objective findings, he did not suggest that she was dissembling or that peripheral neuropathy would not produce some degree of pain. *See id.* at 543. Nor did he indicate that the condition had successfully been brought under control; rather, he voiced hope that it soon would improve. *See id*.[5] One cannot be confident that, had Drs. Burden and Johnson seen the later evidence, they would have continued to opine that the plaintiff was capable of meeting the demands of light work, including standing and/or walking with normal breaks for a total of about six hours in an eight-hour workday. *See id*. at 527, 535.[6]

In this instance, the RFC opinions of Drs. Burden and Johnson accordingly cannot stand as substantial evidence in support of the commissioner's Step 5 finding.

## 2. Subpoint 3: Reliance on Grid

I turn to the plaintiff's third subpoint: that the administrative law judge erred in relying solely on the Grid in the absence of any evidence that the plaintiff remained able to perform a wide range of light work despite her nonexertional impairments. *See* Statement of Errors at 3-5. She is again correct.

---

[5] At oral argument, counsel for the commissioner contended that the subsequent Sussman evidence was not inconsistent with the DDS reviewers' RFC findings, and would not warrant further review by DDS, inasmuch as (i) a painful leg condition of which the plaintiff complained in August 2003 was essentially resolved by February 18, 2004, (ii) on December 18, 2003 the plaintiff was noted to be suffering from only mild peripheral neuropathy, and (iii) during the February 18, 2004 visit the plaintiff was inquiring about the possibility of beginning an exercise program. In 2003 the plaintiff developed erythema nodosum, which caused ulcerations on her legs. *See, e.g*., Record at 552. That condition was indeed essentially resolved by February 2004; however, the plaintiff's peripheral neuropathy had not been brought under control. *See id.* at 543. While the plaintiff did express an interest in beginning to exercise, no specifics of any potential exercise program were mentioned. *See id*. I do not view her expression of an interest in exercising as necessarily consistent with an exertional capacity for light work.

[6] The Record contains at least one earlier mention of peripheral neuropathy, in an April 30, 2003 progress note of Dr. Sussman. *See* Record at 320. From all that appears, Dr. Burden did not see this note. *See id*. at 527, 533. Dr. Johnson did see it, *see id*. at 535; however, it is fair to say the condition subsequently worsened. Dr. Sussman observed in his April 30, 2003 note that the plaintiff, who had presented, *inter alia*, for "painful neuropathy" with increased burning in her legs, had "mildly decreased vibration sense at the toes." *Id*. at 320.

6

Use of the Grid is appropriate when a rule accurately describes an individual's capabilities and vocational profile. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 462 & n.5 (1983). When a claimant's impairments involve only limitations related to the exertional requirements of work, the Grid provides a "streamlined" method by which the commissioner can meet her burden of showing there is other work a claimant can perform. *See, e.g., Heggarty v. Sullivan*, 947 F.2d 990, 995 (1st Cir. 1991). However, in cases in which a claimant suffers from nonexertional as well as exertional impairments, the Grid may not accurately reflect the availability of other work he or she can do. *See, e.g., id.* at 996; *Ortiz v. Secretary of Health & Human Servs.*, 890 F.2d 520, 524 (1st Cir. 1989).[7] Whether the commissioner may rely on the Grid in these circumstances depends on whether a nonexertional impairment "significantly affects [a] claimant's ability to perform the full range of jobs" at the appropriate exertional level. *Id.* (citation and internal quotation marks omitted). If a nonexertional impairment is significant, the commissioner generally may not rely on the Grid to meet her Step 5 burden but must employ other means, typically use of a vocational expert. *See, e.g., id.*

Even in cases in which a nonexertional impairment is determined to be significant, however, the commissioner may yet rely exclusively upon the Grid if "a non-strength impairment . . . has the effect only of reducing that occupational base marginally[.]" *Id*. "[A]though a nonexertional impairment can have a negligible effect, ordinarily the ALJ must back such a finding of negligible effect with the evidence to substantiate it, unless the matter is self-evident." *Seavey v. Barnhart,* 276 F.3d 1, 7 (1st Cir. 2001) (citation and internal quotation marks omitted).

---

[7] "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining ability to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling 96-9p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2006) ("SSR 96-9p"), at 156. "Nonexertional capacity considers any work-related limitations and restrictions that are not exertional." *Id*. "Therefore, a nonexertional limitation is an impairment-caused limitation affecting such capacities as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling." *Id*.

The administrative law judge accepted the finding of Dr. Johnson that the plaintiff was precluded from constant use of her right hand. *See* Record at 20. Dr. Johnson clarified that this limitation pertained not only to ability to reach in all directions, including overhead, but also to capacity for handling (gross manipulation). *See id*. at 537. Although, in this case, the administrative law judge suggested that she used the Grid as a "framework," Finding 11, Record at 22, she clearly relied solely on the Grid, no vocational expert having been present at the plaintiff's hearing, *see id*. at 568. She concluded that the plaintiff's ability to perform light work was not "significantly compromised" by any of her limitations. *See id*. at 21. There is no evidence of record that upper-extremity limitations such as those found for the plaintiff (i) do not significantly affect a claimant's ability to perform the full range of light work or (ii) reduce the occupational base for such work only marginally. Thus, the decision can survive scrutiny only to the extent that proposition is "self-evident." *Seavey*, 276 F.3d at 7.

At oral argument, counsel for the plaintiff contended that in fact the opposite is true: It is far from self-evident that it is appropriate to rely on light-work Grid tables in cases involving an upper-extremity limitation such as hers. For that proposition he cited Social Security Rulings 83-14 and 85-15 and a recent decision of this court, *Nixon v. Barnhart*, Civil No. 05-193-P-S (D. Me. June 1, 2006) (rec. dec., *aff'd* June 22, 2006). I agree.[8]

In Social Security Ruling 83-14 ("SSR 83-14"), the commissioner addressed the impact of nonexertional impairments on light work, stating:

> The major difference between sedentary and light work is that most light jobs – particularly those at the unskilled level of complexity – require a person to be standing

---

[8] While the plaintiff's counsel did not cite the *Nixon* case in his brief, he did argue that an upper-extremity limitation such as his client's undercuts sole reliance on the Grid, citing, *inter alia*, Social Security Rulings 83-14 and 85-15. *See* Statement of Errors at 3-5. While citation of the *Nixon* case would have been helpful and preferable, the Statement of Errors sufficed to put the commissioner on adequate notice of the issue being raised. *See id.* Counsel for the commissioner was familiar with *Nixon* and able to argue (albeit ultimately unpersuasively) that this case was distinguishable.

> or walking most of the workday. Another important difference is that the frequent lifting or carrying of objects weighing up to 10 pounds (which is required for the full range of light work) implies that the worker is able to do occasional bending of the stooping type; i.e., for no more than one-third of the workday to bend the body downward and forward by bending the spine at the waist. Unlike unskilled sedentary work, many unskilled light jobs do not entail fine use of the fingers. Rather, they require gross use of the hands to grasp, hold, and turn objects. Any limitation on these functional abilities must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work.

SSR 83-14, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 46. The ruling provides examples of nonexertional restrictions that have "very little or no effect on the unskilled light occupational base"; however, restrictions on constant use of an upper extremity are not among them. *See id*. In similar vein, in SSR 85-15, the commissioner observed:

> Reaching, handling, fingering, and feeling require progressively finer usage of the upper extremities to perform work-related activities. Reaching (extending the hands and arms in any direction) and handling (seizing, holding, grasping, turning or otherwise working primarily with the whole hand or hands) are activities required in almost all jobs. Significant limitations of reaching or handling, therefore, may eliminate a large number of occupations a person could otherwise do. Varying degrees of limitations would have different effects, and the assistance of a VS may be needed to determine the effects of the limitations.

SSR 85-15, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 350 (italics omitted).

Relevant regulations, as well, contemplate that a claimant must be able, *inter alia*, to do some pushing and pulling of arm controls to be deemed capable of performing a full or wide range of light work. *See* 20 C.F.R. § 404.1567(b) ("[A] job is in [the light-work] category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.").

9

Against this backdrop, I concluded in *Nixon* that the commissioner had fallen short of showing that sole reliance on the light-work Grid tables was appropriate given Nixon's inability to use his right arm for vigorous, repetitive activities. *Nixon*, Civil No. 05-193-P-S, slip op. at 8-12. I concluded:

> The burden of proof at Step 5 rests on the commissioner. In the absence of evidence or any persuasive authority (*e.g.*, a Social Security ruling) demonstrating that an upper-extremity restriction such as the plaintiff's has the effect of reducing the RFC for the full range of light work only marginally, the commissioner's decision cannot stand. *See, e.g., Wadford v. Chater*, No. 95-7147, 1996 WL 421988, at *1 (10th Cir. July 26, 1996) ("[T]he claimant does not bear the burden to prove that his right hand weakness substantially diminishes his capacity for a full range of light work on a sustained basis; instead, the Secretary shoulders the burden of showing that the weakness does *not* substantially diminish it.") (citation and internal punctuation omitted) (emphasis in original).

*Id*. at 12.

At oral argument, counsel for the commissioner sought to distinguish *Nixon* on the basis that, in that case, the restriction involved the claimant's entire right arm whereas, here, the plaintiff is restricted only from constant use of her right hand. She also pointed out that, in this case, the preclusion from constant use of the right hand still permits occasional and even frequent usage, which she posited was not inconsistent with application of the Grid per SSR 83-14 and SSR 85-15. I am unpersuaded. While the plaintiff's restriction involves her right hand, and not her whole right arm, it implicates her ability to reach in all directions, including overhead, and her capacity for handling (gross manipulation). *See* Record at 537. Per SSR 83-14, "[a]ny limitation" on the capacity for gross manipulation "must be considered very carefully to determine its impact on the size of the remaining occupational base of a person who is otherwise found functionally capable of light work." SSR 83-14, at 46. Here, as in *Nixon*, the commissioner has neither proffered evidence that the plaintiff's upper-extremity limitation has no significant impact on the occupational base for light work nor pointed to a source indicating that the proposition is self-evident. Accordingly, she has not met her Step 5 burden, necessitating reversal and remand.

## B.  Remaining Points of Error

For the benefit of the parties, I briefly consider the constellation of remaining subpoints of error, none of which independently warrants reversal and remand.  They are:

1.  <u>Asserted Internal Inconsistency</u> – that the administrative law judge, by expressly crediting the plaintiff's hearing testimony, found her incapable of returning to past relevant work as a sporting-goods store manager – a sedentary job – yet went on for purposes of Step 5 to find her capable of performing work at a light exertional level.  *See* Statement of Errors at 2-3.  At oral argument, counsel for the plaintiff suggested that the administrative law judge had in effect impermissibly made two separate RFC determinations, one for Step 4 and one for Step 5.  He contended that because the two are impossible to reconcile, the internal inconsistency necessitates reversal and remand.  This argument has facial appeal.  Yet, at oral argument, counsel for the commissioner persuasively argued that the administrative law judge (i) made one unified, consistent RFC determination (finding the plaintiff capable of light work), (ii) found in the plaintiff's favor at Step 4 only by essentially giving her the benefit of the doubt, and (iii) did not thereby prejudice her.  This indeed appears to have been the case.  Only after determining that the plaintiff retained the exertional capacity for light work, *see* Record at 20, did the administrative law judge go on to find at Step 4:

> The undersigned is accepting [the plaintiff's] testimony [that she could not handle the stress of trying to help customers as a result of her physical problems walking up and down aisles and withstanding the constant demands of the job] and, despite the fact that she retains a light residual functional capacity, has concluded that she would be unable to return to her past work, even though she contends that she performed it at the sedentary exertional capacity due to her impairments.

*Id*. at 21 (citation omitted).  Inasmuch as the seeming inconsistency is in fact explainable, reversal is not warranted on this basis.

2.      <u>Failure To Address Listings</u> – that the administrative law judge failed to address the plaintiff's representative's argument that she met Listings 9.08 (diabetes mellitus) and/or 11.14 (peripheral neuropathy).  *See* Statement of Errors at 5-6.  Any error in failing to address this point is harmless.  The plaintiff's representative did not elucidate at hearing, nor does her counsel clarify now, how her condition met or equaled either Listing.  *See* Record at 571-72; Statement of Errors at 5-6.  Accordingly, she is deemed to have waived the point.  *See, e.g., Graham v. United States*, 753 F. Supp. 994, 1000 (D. Me. 1990) ("It is settled beyond peradventure that issues mentioned in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (citation and internal quotation marks omitted).  In any event, I find no objective medical evidence of record suggesting that the plaintiff's condition met either Listing.  While she had peripheral neuropathy, there is no evidence of "[n]europathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dextrous movements, or gait and station[.]"  Listing 9.08(A); *see also* Listing 11.14 (similar requirement).

3.      <u>Failure To Consider All Medical Conditions</u> – that the administrative law judge detoured from the proper analytical route of (i) assessing whether all claimed medical conditions were medically determinable and, if so, any were severe and (ii) considering the combined impact of all medically determinable conditions, severe and non-severe, on RFC.  *See* Statement of Errors at 6-7.  The plaintiff complains, in particular, that the administrative law judge gave short shrift to her claimed fibromyalgia, arthritis and headaches, sequelae of which should have been factored into her RFC.  *See id*.  Any error again is harmless.  The administrative law judge apparently considered the claimed fibromyalgia and arthritis to be subsumed in the plaintiff's chronic pain syndrome.  *See* Record at 17.  This was not unreasonable; Dr. Sussman's later progress notes mentioned chronic pain

syndrome but not arthritis or fibromyalgia. *See, e.g.*, *id*. at 543. In any event, the administrative law judge embraced a DDS assessment that itself took into account the plaintiff's allegations of fibromyalgia and arthritis. *See id*. at 535. With respect to headache syndrome, the administrative law judge supportably implicitly found the condition non-severe, with no perceptible impact on the plaintiff's functioning, inasmuch as it had been well-controlled for some time with Depakote and was considered, as of February 2003, essentially to have been resolved. *See id*. at 19, 331, 353, 543, 547.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **VACATED** and the case **REMANDED** for further proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 6th day of December, 2006.

/s/ David M. Cohen  
David M. Cohen  
United States Magistrate Judge